<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| PAULLEE DIOGENE, <br><br> *Plaintiff,* <br><br> v. <br><br> BOUNCE AI, INC., AND SYSTEMS & SERVICES TECHNOLOGIES, INC., <br><br> *Defendants.* | Civil Action No. 25-17006 <br><br> **OPINION** <br><br> April 20, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the court upon the November 19, 2025 motion of Defendant Bounce AI, Inc. ("Bounce AI") to dismiss the Complaint of *pro se* Plaintiff Paullee Diogene, (ECF 1-2, "Complaint" or "Compl."), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF 14, "Bounce's Motion" or "Bounce Mot.") Plaintiff opposed Bounce AI's motion on December 1, 2025.[1] (ECF 20, "Opposition" or "Opp.") Defendant Systems & Services Technologies, Inc. ("SST") also moved to dismiss the Complaint on December 4, 2025. (ECF 21, "SST's Motion" or "SST Mot.") Bounce AI filed a reply on December 8, 2025. (ECF 23, "Bounce Reply.") The Court has decided the

---

[1] The Court is in receipt of Plaintiff's November 24, 2025 motion to strike Bounce AI's motion. (ECF 18.) Plaintiff alleges improper service of Bounce AI's appearance, extension request, and motion. (*Id.* ¶¶ 1-4.) Plaintiff's motion is moot as Plaintiff waived their *pro se* right to mailed service under Fed. R. Civ. P. 5(b) and 77(d) by signing a consent and registration form to receive documents electronically on October 30, 2025. (ECF 10-2.) Bounce AI's appearance, extension request, and motion to dismiss were filed electronically on November 4, 5, and 19, 2025, respectively, after Plaintiff waived mailed service. (ECF 6-8, 14.) The Court has already denied Plaintiff's proposed order accompanying Plaintiff's motion to strike. (ECF 19.) Plaintiff's motion to strike Bounce AI's motion is DENIED.

1

motions upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons stated below, Defendant Bounce AI's Motion to Dismiss Counts I-IV of the Complaint is **GRANTED**.  Defendant SST's Motion to Dismiss Counts I-IV of the Complaint is **GRANTED**.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Plaintiff is an adult individual who resides in the state of New Jersey.  (Compl. ¶¶ 2-3.) Bounce AI is a debt buyer and furnisher of credit information.  (*Id.* ¶ 4.)  SST is a debt servicer and furnisher of credit information.  (*Id.* ¶ 5.)  Tally Technologies Inc. ("Tally"), who is not a party to this action, is the alleged original creditor of Plaintiff's account.  (*Id.* ¶ 7.)  According to Defendants' records included by Plaintiff in the Opposition, Plaintiff signed an agreement with Tally on September 7, 2022, "for a line of credit in the amount of $5,000.00."  (Opp. Exhibit E-3; *see also id.* Exhibit A.)  "Tally ceased operations in early September 2024 and transferred all open accounts to SST for servicing purposes."  (*Id.* Exhibit E-3; *see also id.* Exhibit F.)  SST created an account number for Plaintiff (47020011) and later transferred the account to Bounce AI.  (Compl. ¶¶ 7-9.)  Plaintiff did not enter into an agreement with Bounce AI or SST.  (*Id.*)  After Plaintiff missed payments on the account after the transfer, (Opp. Exhibit E-3.), Defendants furnished negative tradelines to credit reporting agencies.  (Compl. ¶ 10; *see also* Opp. Exhibit C.)

On September 25, 2025, Plaintiff initiated this action in state court.  (ECF 1-2.)  In the Complaint, Plaintiff alleges that Defendants Bounce AI and SST engaged in inaccurate credit

---

[2] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom.  *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).  The Court also considers any "document integral to or explicitly relied upon in the complaint."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  The Court construes Plaintiff's pro se filings liberally.  *See Marcinek v. Comm'r*, 467 F. App'x 153, 154 (3d Cir. 2012) (holding that courts are "under an obligation to liberally construe the submissions of a pro se litigant").

reporting and failed to conduct reasonable investigations in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* (Count I).  (Compl. ¶¶ 14-16.)  Plaintiff also claims that Defendants failed to validate the alleged debt, that Bounce AI misrepresented itself as an original creditor, and that SST continued to contact Plaintiff after receiving a cease-and-desist letter in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (Count II).  (*Id.* ¶¶ 17-20.)  Plaintiff further alleges that Defendants engaged in unconscionable commercial practices in violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. 56:8-2, *et seq.* (Count III).  (*Id.* ¶¶ 21-22.)  Lastly, Plaintiff claims that Bounce AI's alleged ownership of Plaintiff's account relies on an improper transfer from SST, who disclaimed ownership of the account in a CFPB response.  (*Id.* ¶¶ 23-29.)  Therefore, Plaintiff alleges that Defendants' activities were based on a deficient chain of title in violation of the FCRA, FDCPA, and NJCFA (Count IV). (*Id.*)

On October 29, 2025, Defendant SST, with the consent of Defendant Bounce AI, filed to remove this action.  (ECF 1.)  Plaintiff then filed numerous improper motions.[3]  On November 19, 2025, Bounce AI filed its motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  (*See generally* Bounce Mot.)  On December 1, 2025, Plaintiff opposed Bounce's motion. (*See generally* Opp.)  On December 4, 2025, SST filed its motion to dismiss for failure to state a

---

[3] Plaintiff filed a notice of Bounce AI's failure to consent to removal on November 5, 2025, alleging that Bounce AI failed to appear.  (ECF 9.)  Bounce AI filed two notices of appearance on November 4, 2025.  (ECF 6-7.)  On November 6, 2025, the Court's clerk granted Bounce AI an extension to answer the Complaint until November 19, 2025, pursuant to L. Civ. R. 6.1(b). Plaintiff then filed a request for default judgment against Bounce AI on November 13, 2025.  (ECF 13.)  On November 19, 2025, the Court's clerk properly denied Plaintiff's request for default judgment, citing Bounce AI's granted extension.

claim under Fed. R. Civ. P. 12(b)(6).  (*See generally* SST Mot.)  On December 8, 2025, Bounce

AI filed its reply.[4]  (*See generally* Bounce Reply.)

## II.      <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Plaintiff must allege

"enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  The plausibility standard is satisfied when the Plaintiff alleges sufficient

facts "that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the facts alleged need

not be probable, they must "show more than a sheer possibility that a defendant has acted

unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation

marks and citations omitted).

When a Plaintiff files a complaint *pro se*, their "pleadings must be liberally construed."

*Alexander v. Gennarini*, 144 F. App'x 924, 2005 WL 1805621, at *2 (3d Cir. 2005).   The

arguments of *pro se* litigants "must be held to less stringent standards than formal pleadings drafted

by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97,

106 (1976)).  Courts must accept all factual allegations in the complaint as true and draw all

reasonable inferences in favor of the Plaintiff.  *Phillips v. Ctny. of Allegheny*, 515 F.3d 224, 231

(3d Cir. 2008).  However, when a Plaintiff alleges legal conclusions disguised as factual assertions,

or factual assertions that are otherwise unreasonable, the court is under no obligation to accept

such allegations as true. *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007) (holding a court

is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions

---

[4] Plaintiff also filed a request for default judgment against SST on December 8, 2025.  (ECF 24.)
On December 16, 2025, the Court's clerk properly denied Plaintiff's request for default judgment,
citing SST's timely filed motion to dismiss.

disguised as factual allegations"). If, after review of the pleadings, the court determines that the Plaintiff failed to establish a claim and construed all reasonable facts and inferences in favor of the Plaintiff, the court may dismiss the complaint for failure to state a claim upon which relief can be granted. *Stringer v. Bureau of Prisons, Federal Agency*, 145 F. App'x 751, 2005 WL 2009019, at *1 (3d Cir. 2005).

### III.    ANALYSIS

### A. FCRA Claim

Count I arises under the FCRA. The FCRA regulates the contents of consumer reports and imposes duties on Consumer Reporting Agencies[5] ("CRA") and entities who furnish information to CRAs. 15 U.S.C. §§ 1681a, 1681s-2. Congress enacted the FCRA in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). In enacting the FCRA, "Congress sought to preserve the consumer's privacy in the information maintained by consumer reporting agencies." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 191 (3d Cir. 2009) (citing *Safeco*, 551 U.S. at 52; *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 725 (7th Cir. 2004)). The FCRA provides for both criminal penalties, § 1681q, and civil liability which may include compensatory and punitive damages, costs, and attorneys' fees. §§ 1681n, 1681o. The United States district courts have jurisdiction over suits brought under the FCRA. § 1681p; *see also Houghton v. Ins. Crime Prevention Inst.*, 795 F.2d 322, 324 (3d Cir. 1986).

---

[5] "The term 'consumer reporting agency' means any person [including a corporation or other entity] which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

Plaintiff alleges that Defendants are furnishers of credit information.  (Compl. ¶¶ 4-5.)  In Count I, Plaintiff claims that Defendants "reported inaccurate and misleading information to credit bureaus without verifying its accuracy" and "failed to conduct reasonable investigations" in violation of the FCRA.  (Compl. ¶¶ 14-15.)  Section 1681s-2(b) of the FCRA applies here as it is "the only section that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information."  *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011).   Section 1681s-2(b) imposes a duty on furnishers of information to "conduct an investigation" of disputed information and modify or delete information that is "found to be inaccurate or incomplete."  § 1681s-2(b)(1).   However, a furnisher's duty is triggered only after it receives notice of a dispute from the CRA.  *Id.*

For a consumer to state a claim against a furnisher of information under § 1681s-2(b)(1), "courts in this district have consistently held that . . . 'a plaintiff must plead that '(1) she sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to [reasonably] investigate and modify the inaccurate information.'"  *Bello v. Capital One Bank*, No. 20-1218, 2021 WL 3616156, at *3 (alteration in original) (quoting *Dimedio v. HSBC Bank*, No. 08-5521, 2009 WL 1796072, at *3 (D.N.J. June 22, 2009)).   Therefore, the plaintiff must "first alert the credit reporting agency that reported the allegedly erroneous information of a dispute."  *SimmsParris*, 652 F.3d at 359.   The CRA then has a duty to provide notice of the consumer's dispute to its furnishers of credit information.  § 1681i(a)(2).   It is the CRA's notice of a dispute that "trigger[s] the furnisher's duty to investigate" and modify inaccurate information under § 1681s-2(b)(1), not notice from a consumer.  *See SimmsParris*, 652 F.3d at 359.   "It is only when

the furnisher fails to undertake a reasonable investigation following such notice that it may become liable to a private litigant under § 1681s-2(b)." *Id.*

Defendants argue that Plaintiff failed to allege that Plaintiff notified any CRA of a dispute. (Bounce Mot. at 6; SST Mot. at 5.)  Plaintiff contends that the information was disputed with three CRAs.  (Opp. at 4.)  Bounce AI points out that Plaintiff did not attach any supporting documentation detailing Plaintiff's communications with the CRAs.  (Bounce Reply at 3.) Defendants also argue that Plaintiff failed to allege that Defendants received notice of Plaintiff's disputes from any CRA.  (Bounce Mot. at 6; SST Mot. at 5.)

Plaintiff's allegations do not sustain a cause of action under § 1681s-2(b).  First, it is unclear whether Defendants were notified of Plaintiff's dispute from the three CRAs.  Although the attachments to Plaintiff's Opposition raise a plausible inference, (*see* Opp. Exhibit E), thereby triggering Defendants' duty to reasonably investigate and modify inaccuracies, Plaintiff's FCRA claim remains deficient.  Plaintiff's bald and conclusory assertions that Defendants "failed to conduct reasonable investigations" and furnished "inaccurate and misleading information to credit bureaus" fails to assert the specific factual inaccuracies allegedly contained in Defendants' furnishments. (Compl. ¶¶ 14-15.)  "The Complaint . . . offers no facts describing what the negative credit information consisted of; in what respect it was false or incomplete; or how Defendant[s] failed to conduct . . . reasonable investigation[s]." *Daniels v. Bank of Am.*, No. 23-01525, 2023 WL 9057318, at *2 (D.N.J. Dec. 30, 2023) (dismissing FCRA action for similar deficiencies); *see also Grant v. Robert*, No. 22-2886, 2022 WL 16815470, at *2 (D.N.J. Nov. 8, 2022) (same). Element (3) of a § 1681s-2(b) claim requires a plausible allegation that Defendants failed to investigate and modify inaccuracies properly.  It is not plausible that Defendants failed to do so when the substance of the alleged inaccuracies has not been identified.  The Court liberally

7

construes *pro se* pleadings, but it need not credit "bald assertions" or "legal conclusions." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Therefore, Plaintiff fails to state a valid claim under the FCRA. Accordingly, this Court holds that Count I of Plaintiff's complaint is **DISMISSED** without prejudice.

### B. FDCPA Claim

In Count II of the Complaint, Plaintiff claims that Defendants failed to validate the alleged debt, that Bounce AI misrepresented itself as an original creditor, and that SST continued to contact Plaintiff after receiving a cease-and-desist letter in violation of the FDCPA. (Compl. ¶¶ 17-20.) The FDCPA "provides a remedy for consumers who have been subjected to abusive, deceptive, or unfair debt collection practices by debt collectors." *Waggen v. MRS BPO, LLC*, 620 F.Supp.3d 156, 161 (D.N.J. 2022) (citing *Piper v. Portnoff Law Assocs.*, 396 F.3d 227, 232 (3d Cir. 2005)). To establish a claim under the FDCPA, a plaintiff must prove that (1) they are a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involved an attempt to collect a "debt," and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt. *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 358 (3d Cir. 2018). Pursuant to 15 U.S.C. § 1692a(6), a "debt collector" is defined as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6). The definition excludes any person attempting to collect a debt "which was not in default at the time it was obtained by such person." *Id.* § 1692a(6)(F)(iii).

### 1. Defendant SST

SST argues that it is not a debt collector.  (SST Mot. at 6-7.)  It also argues that Plaintiff does not allege that "the loan was in default at the time that SST began servicing the loan."  (*Id.* at 7.)  Plaintiff did not allege that SST was a debt collector under § 1692a(6).  Plaintiff admits that SST transferred Plaintiff's account to Bounce AI for servicing after Plaintiff's missed payment.  (Compl. ¶ 9; Opp. Exhibit A.)  Therefore, the Court holds that SST is not a debt collector under § 1692a(6).  Because Plaintiff did not sufficiently plead element (2) of the FDCPA claim against SST, the claim must fail.  The Court need not reach elements (3) and (4): SST's purported violation of the FDCPA by contacting Plaintiff after receiving a cease-and-desist letter.  (Compl. ¶ 19.)  Accordingly, Count II of Plaintiff's complaint as to SST is **DISMISSED** without prejudice.

### 2. Defendant Bounce AI

Bounce AI also argues that it is not a debt collector.  (Bounce Mot. at 6-7.)  Plaintiff contends that Bounce AI "acted as a debt collector" because "[i]t attempted to collect a debt allegedly owed to another, . . . acquired a charged-off consumer account, . . . sent credit reporting intended to pressure payment, [and] . . . performed collection activity on behalf of SST."  (Opp. at 4.)  Bounce AI seemingly concedes that it is a debt collector under the FDCPA and pivots to argue that "Plaintiff fails to adequately allege that Bounce AI has violated a provision of the FDCPA in attempting to collect a debt."  (Bounce Reply at 4.)

This Court is obligated to construe the allegations in the complaint in the light most favorable to the non-moving party.  *Phillips*, 515 F.3d at 231-33 (3d Cir. 2008) ("[C]ourts [should] accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.") (internal quotations omitted).  The Court is also aware of its duties to use "less stringent standards" when evaluating a complaint filed by *pro se* litigants.  *Haines v. Kerner*,

404 U.S. 519, 520 (1972). Given this plausibility standard, the Court proceeds in its analysis to elements (3) and (4) of the FDCPA claim as to Bounce AI.

Plaintiff's claim falls short because Plaintiff fails to name a provision of the FDCPA Bounce AI violated. Plaintiff fails to allege an enumerated unfair or unconscionable practice to collect debt under § 1692(f), any false representation under § 1692(e), or failure by Bounce AI to send statutorily required notices under § 1692(g). (*See generally* Compl.) More specifically, alleging that Bounce AI misrepresented itself as an original creditor, without tying such misrepresentation to debt collection, does not rise to a false or misleading representation "*in connection with the collection of any debt.*" § 1692(e) (emphasis added). Additionally, the exhibits attached by Plaintiff show that Bounce AI properly notified Plaintiff of its intent to validate the debt within 30 days in accordance with § 1692(g), (*see* Opp. Exhibit B), and therefore Plaintiff's claim that Defendants failed to provide proper validation of the alleged debt is unfounded. (Compl. ¶ 18.) Therefore, Plaintiff fails to allege facts that plausibly assert a claim for relief under the FDCPA. For these reasons, Count II of Plaintiff's complaint as to Bounce AI is **DISMISSED** without prejudice.

## C. NJCFA Claim

In Count III of the Complaint, Plaintiff alleges that Defendants engaged in unconscionable commercial practices, deception, misrepresentation, and false pretenses. (Compl. ¶ 21.) The Act was primarily intended to protect "consumers who purchase 'goods or services generally sold to the public at large.'" *Arc Networks, Inc. v. Gold Phone Card Co., Inc.*, 756 A.2d 636, 637 (N.J. Super. Ct. Law Div. 2000) (quoting *Marascio v. Campanella*, 689 A.2d 852, 857 (N.J. Super. Ct. App. Div. 1997)). The Act was designed to apply to "products and services sold to consumers in the popular sense." *Id.* at 638. "[T]o be a consumer respecting the transaction in question, the

10

business entity must be 'one who uses (economic) goods, and so diminishes and uses their utilities.'" *City Check Cashing Inc. v. Nat'l State Bank*, 582 A.2d 809, 811 (N.J. Super. Ct. App. Div. 1990) (quoting *Hundred East Credit Corp. v. Eric Schuster*, 515 A.2d 246, 248 (N.J. Super. Ct. App. Div. 1986)).

"To state a prima facie case under the NJCFA, a plaintiff must demonstrate three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) (citing *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010)). An "unlawful practice" is defined in the NJCFA as:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person . . .

N.J. Stat. Ann. § 56:8-2. Additionally, "[a]n actionable loss is not 'hypothetical or illusory.'" *Spera v. Samsung Elecs. Am., Inc.*, No. 12-05412, 2014 WL 1334256, at *5 (D.N.J. Apr. 2, 2014) (quoting *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005)). Instead, "what New Jersey Courts require for that loss to be 'ascertainable' is for the consumer to quantify the difference in value between the promised product and the actual product received." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011). Finally, CFA claims are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 435 (D.N.J. 2012) (recognizing that Rule 9(b)'s heightened pleading requirements apply to NJCFA claims). However, the Third Circuit has

11

applied the *Iqbal* plausibility standard instead of the heightened 9(b) standard to NJCFA violations based on the unconscionable commercial practices clause. *Ciser v. Nestle Waters N. Am., Inc.*, 596 F. App'x 157, 160 (3d Cir. 2015) (citing *Iqbal*, 556 U.S. at 678).

Defendants argue that Plaintiff failed to allege any factual assertions sufficient to constitute any of the elements of an NJCFA claim. (Bounce Mot. at 8-9; SST Mot. at 10.) Plaintiff asserts that Bounce AI engaged in unlawful practices, deception, misrepresentation, concealment, omission of material facts, and unconscionable commercial practices. (Opp. at 5.) Plaintiff also argues that Plaintiff suffered an ascertainable loss that includes a $8,700 credit-line reduction, hard inquiry-related harm, higher interest rates, negative credit score impacts, time spent correcting errors, and out-of-pocket losses. (*Id.*) Defendants point out that Plaintiff has not alleged "a causal connection between the alleged unlawful conduct and perceived ascertainable loss" attributable to Defendants. (Bounce Reply at 5.)

Under either the Rule 8 *Iqbal* standard or Rule 9(b) heightened standard, Plaintiff fails to state a claim under the NJCFA, even with the Court's liberal construing of *pro se* pleadings. First, it is unclear whether the Complaint adequately pleads that Plaintiff is a "consumer" as contemplated by the NJCFA. The Complaint does not allege that Plaintiff used any good or diminished or used any utility provided by Defendants. *See Arc Networks*, 756 A.2d at 638; *see also City Check Cashing*, 582 A.2d at 811. Plaintiff did not directly purchase goods or services from Defendants, use or diminish goods or services, nor does Plaintiff assert being "victimized by being lured into a purchase through fraudulent, deceptive, or other similar kind of selling or advertising practices." See *J & R Ice Cream Corp. v. Cal. Smoothie Licensing Corp.*, 31 F.3d 1259, 1272 (3d Cir. 1994); *see also Daaleman v. Elizabethtown Gas Co.*, 390 A.2d 566, 569 (N.J. 1978). Rather, the Complaint specifies that neither Defendant was the original creditor, and that

12

Plaintiff did not enter into any agreement with Defendants. (Compl. ¶¶ 6-7.) Plaintiff therefore did not purchase a product or service from Defendants in the "popular sense." *See Arc Networks*, 756 A.2d at 638. Additionally, the Complaint contains only conclusory assertions regarding the alleged unlawful conduct of Defendants. The Complaint does not allege facts that support a plausible allegation that Defendants deceived, misrepresented, concealed, omitted, or engaged in any other unconscionable practice as to Plaintiff. Again, the Court must liberally construe *pro se* pleadings, but it need not credit "bald assertions" or "legal conclusions." *Morse*, 132 F.3d at 906. For these reasons, Plaintiff's NJCFA claim contained in Count III of the Complaint is **DISMISSED** without prejudice.[6]

### D. Count IV

The remaining Count in Plaintiff's complaint contains a lack of ownership and chain of title deficiency argument. (Compl. ¶¶ 23-29.) Plaintiff alleges that SST lacked ownership and standing to sell, assign, or transfer the account to Bounce AI, which created a broken chain of title in violation of the FCRA, FDCPA, and NJCFA. (*Id.*) Defendants argue that Plaintiff does not establish an otherwise viable legal theory outside of the three statutes in Counts I-III upon which relief can be granted. (Bounce Mot. at 9-10; SST Mot. at 10-11.) Plaintiff contends that the fact that Bounce AI's allegedly lacks ownership of Plaintiff's account and a deficient chain of title supports all of the claims. (Opp. at 5.)

---

[6] Because the NJCFA claim fails for the reasons discussed above, the Court declines to engage in the "ascertainable loss" analysis at this time. However, because it seems that the NJCFA is an ill-suited cause of action for the allegations in the Complaint, the Court notes that an "ascertainable loss" assessment under the NJCFA would require Plaintiff to quantify the difference in value between the promised product and the actual product received from Defendants. *See Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011). It is presently unclear on the face of the Complaint what products or services were explicitly transacted for between Plaintiff and the Defendants.

The Court agrees with Defendants that Plaintiff failed to establish a recognizable cause of action independent of the FCRA, FDCPA, and NJCFA.  As the Court sets out above, Plaintiff failed to allege facts that plausibly assert a claim for relief under the three statutes.  Therefore, "[t]here is simply no . . . cause of action [as to Count IV] and the Court declines to create one." *Jevic v. Coca Cola Bottling Co. of N.Y., Inc.*, No. 89-4431, 1990 WL 1098511, at *8 (D.N.J. June 6, 1990).  Because Plaintiff has not alleged a cause of action that survives in Count IV, the claim must fail.  Accordingly, Count IV is **DISMISSED** without prejudice.

## IV.    CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss Plaintiff's Complaint are **GRANTED**.  Counts I-IV are dismissed without prejudice.  An appropriate order follows. Plaintiff may file an amended pleading that is consistent with this Opinion within thirty (30) days of the date of this Opinion and the accompanying Order.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Stacey D. Adams, U.S.M.J.
       Parties