UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

Paullee Diogene                                    Case No. 2:25-cv-17006-JKS-SDA

Plaintiff,

v.

Bounce AI, inc. and

Systems & Services Technologies, Inc.,

Defendants.

---

## AMENDED COMPLAINT

Plaintiff Paullee Diogene, proceeding pro se, alleges the following against Defendants Bounce AI, inc. ("Bounce AI") and Systems & Srevices Technologies, Inc. ("SST"):

### I.  JURISDICTION AND VENUE

1. This action arises under:
- Fair Credit Reporting Act (FCRA) 15 U.S.C. §1681 et seq.
- Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 et se
2. This Court has Jurisdiction under 28 U.S.C. §1331 (Federal Question Jurisdiction)

3. Venue is proper in the District of New Jersey under 28 U.S.C. §1391 Because Plaintiff resides in New Jersey and the credit reporting and collection conduct occurred within this District.

### II.  PARTIES

4. Plaintiff Paullee Diogene is a consumer residing in Bloomfield, New Jersey.

5. Defendant Bounce AI, Inc. is a debt collector and furnisher of credit information.

Bounce AI admitted in written correspondence: "Bounce AI, Inc. is a debt collector."

6.    Defendant Systems & Services Technologies, Inc. ("SST") is a debt collector and loan servicer engaged in collection activities affecting Plaintiff.

## III.    FACTUAL BACKGROUND

### A. Loan Origination and Servicing Transfer

7.    Plaintiff obtained a personal loan originally issued by Tally Technologies, Inc., on or about September 7, 2022

8.    The account was issued as an open-ended Line of Credit, not an installment loan. The credit agreement explicitly stated: ("Tally Line of Credit") to pay your credit card bills. (**See Exhibit A-9(c)**)

9.    Plaintiff was never provided with a traditional numerical account number from Tally Technologies.

10.    Instead, SST referenced a non-traditional alphanumeric identifer associated with Tally Technologies. (**See Exhibit B-3**)

11.    On September 9, 2024, Defendant SST sent written notice stating: Service was transferred from Tally Technologies, SST would Service the loan, New SST created account Number: 47020011. (**See Exhibit B**).

12.    SST did not provide documentation explaining how this new number corresponded to the original loan.

### B.    Tally Technologies Shutdown

2

13.     Public information confimed that Tally Technologies ceased operations.

**(See exhibit  F-3 to F-6(a))**

14.     Despite this shutdown, Defendants continued referencing Tally Technologies in later collection activity.

15.     SST treated the account as if it were an installment obligation, despite the original account being an open-ended line of credit. **(See Exhibit A-9(c))**

16.     SST reported information regarding Plaintiff's account to consumer reporting agencies, including Experian, Equifax, and Transunion.

C.     **SST Reporting and Account Closure**

17.     On February 28, 2025, the SST/Tally SSTCORP account was reported as: **Closed**, Balance $0, Remark: **Transferred to another lender (See Exhibit C).** Following closure of the SST/Tally SSTCORP tradline, a separate tradeline associated with Bounce AI later reported a balance alleged owed under a different account number. The creation of multiple tradelines with differing account identifiers contributed to inaccurate and misleading credit reporting affecting Plaintiff. SST reporting further reflected that the account balance was no longer actively owed to SST following closure.

D.     **Bounce AI Soft Pull Before Assignment**

18.     On May 1, 2025, Defendant Bounce AI accessed Plaintiff's credit file through a soft inquiry. **(See Exhibit I.)**

19.     At the time of this inquiry: Bounce AI had not yet acquired ownership, no

3

contractual relationship existed with Plaintiff. The alleged account was sold to Bounce AI on May 2, 2025. **(See Exhibit A-9(b))**

20.   Defendant Bounce AI later admitted that: The debt was sold on May 15, 2025, Therfore:

21.   Bounce AI accessed Plaintiff's credit file 14 days before ownership, without permissible purpose under 15 U.S.C. §1681b

### E.   **Bounce AI Claims Ownership**

22.   On May 15, 2025, Bounce AI sent written Communication stating: Loan originated with Tally Technologies, Debt was sold on May 15, 2025, Bounce AI became Sole Owner. **(See Exhibit B-4).** Bounce AI reported the account as opened May 15, 2025, this date does not reflect the original account opening date of September 7, 2022. This creation of this new tradline materially altered the historical reporting of Plaintiff's credit account.

### F.   **Original Creditor Changes**

**23.**   Defendants Bounce AI, SST reported inconsistent information regarding the identity of the Original creditor, as well as amount associated with Plaintiff's account. **(See exhibit C-3 to C-10)**

24.   At various times, Plaintiff's credit reports identified different entities as the original creditor, including:
   a.   Bounce AI, Inc.;
   b.   Bounce AI
   c.   Tally Technologies, Inc.; and
   d.   Cross River Bank.

4

( Exhibit C-3 to C-10; A-9; A-11; and Exhibit L.)

25.     Defendant Bounce AI modified the reported original creditor information multiple times despite Plaintiff's disputes. And Bounce AI claiming account type as "Debt Buyer" **(See Exhibit A-9; A-10; A-11; C-10)**

26.     These repeated changes demonstrate unreliable and inaccurate reporting.

27.     Defendant failed to conduct a reasonable investigation into disputed information as required by 15 U.S.C. §1681s-2(b).

**G.     Creation of New Bounce AI Account Number**

28.     Bounce AI assigned yet another account number to Plaintiff associated with the same alleged debt, identified as BA-0458555399, and at times referenced the same acoount using numbers-only variations. **(See Exhibit A-9; A-9(a) and Exhibit C-3 to C-10)**

29.     This resulted in Three separate identifiers associated with one alleged loan:

- Tally UUID identifier **(See Exhibit B-3)**
- SST Account No. 47020011
- Bounce AI/Bounce AI, Inc. Account No. BA-0458555399 **(See Exhibit C-10)**

30.     Defendants failed to explain the transition between these multiple identifiers.

**H.     False Original Creditor Reporting**

31.     Despite acknowledging Tally as originator, Bounce AI reported to consumer reporting agencies that: **Original Creditor- BOUNCE AI,** as well as **BOUNCE AI,**

**INC.** as well as using Debt buyer. **(see Exhibit C-7 and C-10).** "Cross River Bank" confirmed that Plaintiff's line of credit originated through it's lending program and was later serviced through SST following Tally Shut down. **(See exhibit L)**. At various times, Plaintiff's credit reports as well as CFPB responses, listed different entities as the original creditor. Including Bounce AI, Tally Technologies, and Cross River Bank. These repeated changes demonstrate inaccurate and unreliable reporting and reflect a failure to conduct a reasonable investtigation following Plaintiff's disputes.

32.    This reporting was false because: Loan originated with Tally Technologies, Bounce AI purchased the account later. **(See Exhibit C-5 to C-6)**

I.    **Plaintiff Disputes Reporting**

33.    Plaintiff disputed this inaccurate reporting with credit reporting agencies. **(See Exhibit L)** Which Cross River Bank Confirmed that Plaintiff's account information had been reported to Experian, Equifax, and TransUnion. This confirmation establishes that Defendants received notice of Plaintiff's disputes through consumer reporting agencies.

34.    Plaintiff filed complaints with the Consumer Financial Protection Bureau (CFPB). Following receipt of Plaintiff's disputes, Defendants were required under federal law to conduct a reasonable investigation, review all relevant information, correct or delete inaccurate information, and report accurate results to consumer reporting agencies.

35.    Defendants responded but failed to correct inaccuracies. **(See Exhibits A and Exhibits C)**

J.    **Tradeline Closure and Reopening**

36.    Bounce AI initially reported the account as closed. **(See Exhibit C-6)**

37.    After Plaintiff initated legal proceedings filed with Special Civil part on September 25, 2025, the tradeline was reopened. (**See Exhibit A-10; A-11 C-6; to C-10;** )

38.    This reopening created: Continued negative reporting, Misleading account activity, Ongoing credit harm. (**See Exhibit C-6 to C-8**)

**K.    Cease-and-Desist Violations by SST**

39.    Plaintiff sent written cease-and-desist notice to Defendant SST, which was delivered on October 10, 2024. (**See Exhibit D-3**)

40.    SST acknowledged receipt of cease-and-desist in CFPB response.

41.    Despite receipt, SST continued to send communications Mulitple times to Plaintiff. This violates 15 U.S.C. §1692c(c). ( **See Exhibits A-3; A-4; D-3 to D-9**)

**L.    Settlement Communications**

42.    Defendant later sent settlement communications offering tradeline deletion in exchange for dismissal. (**See Exhibit E-3 to E-4**)

**M.    Licensing Records**

43.    Searches showed no licensing record for SST in New Jersey. (**See Exhibit G-3 to G-5**)

44.    Bounce AI licensing records began April 2025. (**See Exhibit H**)

**N.    Credit Harm and Damages**

45.    Plaintiff experienced Financial harm.

46.    Plaintiff's credit line was reduced:

$9,000 to $300 **(See Exhibit J)**

**COUNT I**

**(FCRA- Impermissible Credit Inquiry)** Against Bounce AI

47.    Plaintiff realleges prior paragraphs.

48.    Defendant Bounce AI accessed Plaintiff's credit file on: May 1, 2025 **(See exhibit I)**

49.    Defendant did not acquire ownership until: May 15, 2025 **(See Exhibit K)**

50.    Defendant therefore lacked permissible purpose under 15 U.S.C. §1681b

51.    Plaintiff suffered damages including: Credit harm, Emotional distress, Financial harm.

**COUNT II**

**(FCRA- False Credit Reporting)** Against Bounce AI and SST

52.    Plaintiff repeats realleges preceding paragraps. **(See Exhibit C)**

53.    Plaintiff's disputes included identification of inaccurate reporting concerning

Misidentification of Bounce AI as Original Creditor, Reporting of inconsistent creditor identity across consumer reporting agencies, Reporting of inaccurate tradeline information following transfer of the alleged account.

54.    Plaintiff disputed this reporting with all three consumer reporting agencies. (**See Exhibit A and C, and Exhibit L**) . After receiving notice of Plaintiff's disputes, Defendants failed to Conduct a reasonable investigation, Review all relevant information, Correct inaccurate reporting, and delete inaccurate information.

55.    Defendants continued reporting inaccurate information after receiving notice of Plaintiff's disputes.

56.    Specifically, Defendant Bounce AI continued reporting itself as the Original Creditor despite the fact the alleged account originated with Tally Technologies, Inc. (**See Exhibit C-8 and C-9).**

57.    Defendant SST continued reporting the account as transferred while inaccurate reporting remained unresolved. Defendants conduct was willful and or negligent which in Violation: 15 U.S.C. §1681s-2(b)

**COUNT III**

**(FCRA- Reopening Closed Tradeline)** Against Bounce AI

58.    Defendant reported tradeline as closed.

59.    Defendant later reopened tradeline after disputes and litigation.

60.    This created misleading credit reporting. Violation: 15 U.S.C. §1681s-2(b)

9

**COUNT IV**

**(FDCPA- Contact After Cease-and-Desist)** Against SST

61.    Plaintiff incorporates prior paragraphs.

62.    Plaintiff sent written cease-and-desist. **(See Exhibit A-3; A-4; D-1 to D-9)**

63.    SST acknowledged receipt of the cease-and-desist

64.    Despite receipt of the cease-and-desist SST continued communications to Plaintiff.

65.    At the time of these communications, SST was engaged in the collection of alleged consumer debt.

66.    Such continued communication violated: 15 U.S.C. 15 U.S.C. §1692k (Fair Debt Collection Practices Act) 1692c(c) **(See Exhibit A and D).**

**COUNT V**
**(FDCPA 15 U.S.C. §1692g and §1692e)** Bounce AI

67.    Plaintiff repeats and realleges preceding paragraphs.

68.    Defendant Bounce AI acquired the alleged account after it had been charged off on: February 28, 2025 **(See Exhibit A-9(b) and Exhibit B-4)**

69.    Defendant Bounce AI is a debt buyer that aquired the alleged account after default.

70.     Defendant Bounce AI attempted to collect payment from Plaintiff through electronic communications. (**See Exhibit B-4 to B-5**)

71.     Defendant Bounce AI failed to provide proper validation of the alleged debt.

72.     Specifically, Defendant Bounce AI falsely represented itself as the Original Creditor of the alleged debt.

73.     The misrepresentation of creditor identity constitutes a violation of 15 U.S.C. § 1692e

74.     Defendant Bounce AI failed to properly validate the alleged debt as required under: 15 U.S.C. §1692g

75.     Defendant Bounce AI actions consistute unfair and deceptive collection practices.

**COUNT VI.**
(**Violation of the New Jersey Consumer Fraud Act**) Against SST and Bounce AI N.J.S.A. 56:8-1 et seq.

76.     Plaintiff repeats and realleges preceding paragraphs.

77.     Defendants engaged in unlawful conduct in connection with consumer oriented activities involving the collection and reporting of an alleged consumer debt.

78.     Defendant SST represented that Plaintiff's alleged loan had been written off and closed as of February 28, 2025, with a reported balance of $0, and written off. (**See Exhibit C-3 and C-5**)

79.   Defendant Bounce AI sent Communications to Plaintiff offering settlement options and flexible payment plans intended to induce payment from Plaintiff. (**See Exhibit B-5**)

80.   Defendants further made material misrepresentations regarding the identity of the creditor associated with the alleged account. Specifically, Defendants reported Defendant Bounce AI as the Original Creditor to consumer reporting agencies, as well as debt buyer while acknowledging that the alleged account originated with Tally Technologies, Inc. Further Defendant Bounce AI reported inconsistent creditor identities across consumer agencies, and in responses to regulatory complaints, including referances to Tally, Bounce AI, and Cross River Bank as creditor entites associated with the same alleged debt. (**See Exhibit A-9; A-11; C-6 to C-10; Exhibit L**)

81.   Defendants' actions constitute Misrepresentation, Deceptive conduct, and Unconscionable commercial practices. In violation of N.J.S.A. 56:8-2.

82.   As a direct result of Defendants conduct, Plaintiff suffered an ascertainable loss, including but not limited to:

- Reduction in available credit limits
- Temporary decrease in credit score
- increased credit utilization
- Loss of credit opportunities

Plaintiff experienced a substantial reduction in available credit following Defendants reporting of inaccurate information, including a reduction in available credit from Approximately $9,000 to $300, resulting in measurable financial loss. (**See Exhibit J-3 to J-5(a)**)

## DAMAGES

As a result of Defendants violations, Plaintiff suffered damages including but not limited

to:

- Loss of Credit opportunities

- Reduced credit limits

- Emotional distress

- Time spent disputing inaccuracies

- Anxiety and frustration

- Confusion

Financial damges

## TREBLE DAMAGES-NJCFA

Pursuant to N.J.S.A. 56:8-19, Plaintiff seeks:

- Treble damages

- Costs of suit

- Any additional relief the Court deems appropriate

**Plaintiff seeks**:

- Statutory damages

- Actual damages

- Punitive damages

- Cost and fees

## NON-JURY DEMAND

Plaintiff does not demand a trial by jury

**PRAYER FOR RELIEF**

Plaintiff respectfully requests:

- Judgment against Defendants

- Statutory damages pursuant to: **15 U.S.C. §1681n** (Fair Credit Reporting Act-willful Violations) **15 U.S.C. §1681o** (Negligent violations) **15 U.S.C. §1692k** (Fair Debt Collection Practices Act)

- Actual damges for credit harm, financial harm, emotional distress, and loss of time resulting from Defendants inaccurate reporting and unlawful collection practices.

- Punitive damages- (15 U.S.C. §1681n)  Continued reporting after disputes, Continued reporting after lawsuit, continued reporting after CFPB complaints, Reporting conflecting creditor identities, Reporting inaccurate account opening dates, Failure to correct inaccurate reporting.

- Costs of Suit- Recovery of filing fees, service cost

- Remove inaccurate Tradeline

- Cease inaccurate reporting

- Any other relief deemed just.

Respectfully submitted

PAULLEE DIOGENE, Pro, se

Date: May 1, 2026

14